**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt@loker.law
Charles B. Cummins, Esq. (354861)
charles@loker.law
132 Bridge Street
Arroyo Grande, CA 93420
Telephone: (805) 994-0177
Facsimile: (805) 994-0197

*Attorneys for Plaintiffs*,
Andrew Rosenberg; and Meghan Rosenberg

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANDREW ROSENBERG; AND MEGHAN ROSENBERG,**<br><br>Plaintiffs,<br><br>v.<br><br>**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION.**<br><br>Defendant. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1) **THE ELECTRONIC FUNDS TRANSFER ACT, 15 U.S.C. § 1693, ET SEQ.; AND,**<br><br>2) **CALIFORNIA COMMERCIAL CODE, § 11101, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                            *Rosenberg, et al. v. JPMorgan Chase Bank, National Association*
**COMPLAINT**

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

## INTRODUCTION

1. The stated purpose of the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq. ("EFTA"), is to "provide a basic framework establishing the rights, liability, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). EFTA's "primary objection…is the provision of individual consumer rights." *Id.* Moreover, the language of EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability. *Id.*, at 1693d-1.

2. ANDREW ROSENBERG; AND MEGHAN ROSENBERG ("Plaintiffs"), by Plaintiffs' attorneys, brings this action to challenge the actions of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION ("Defendant") with regard to multiple unauthorized electronic funds transfers.

3. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

6. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

| CASE NO.: | 1 OF 15 | *Rosenberg, et al. v. Chase* |
|---|---|---|
| | **COMPLAINT** | |

**JURISDICTION AND VENUE**

8.  Jurisdiction of this Court arises pursuant to federal question jurisdiction under 28 U.S.C. § 1331.  More particularly, this action arises out of Defendant's violations of the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq. ("EFTA"). Additionally, jurisdiction of this Court for supplemental state claims arises pursuant to 28 U.S.C. § 1367.

9.  This action arises out of Defendants' violations of (i) EFTA; and, (ii) the California Commercial Code, §11101, et seq.

10. Because Defendant conducts business within the State of California, personal jurisdiction is established.

11. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiffs reside in Contra Costa County in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all times relevant.

**PARTIES**

12. Plaintiffs are each a natural person who reside in Contra Costa County, State of California, and each is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

13. Additionally, Plaintiffs each are a "customer" as defined by California Commercial Code § 11105(3).

14. Plaintiffs are each a "consumer" as that term is defined by 15 U.S.C. 1693a(6).

15. Plaintiff, Ms. Rosenberg's maiden name (present on the accounts at issue in this case) is "Brown."

16. Defendant is a national bank headquartered in the State of New York and is doing business in the County of Contra Costa, State of California.

17. Defendant is a "financial institution" as defined by 15 U.S.C. 1693a(9).

18. Defendant is a "bank" as defined by California Commercial Code § 11105(2).

19. Defendant is a corporation doing business in the County of Contra Costa, State of California, and is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

## FACTUAL ALLEGATIONS

20. At all times relevant, Plaintiffs each are an individual residing within the State of California.

21. Plaintiffs maintained multiple deposit accounts with Defendant, each of which constitutes an "account" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. 1005.2(b)(1). These accounts ("the Account" or collectively, "the Accounts"), ending in 0720 and 5418 respectively, is each the subject of this litigation.

22. In December, 2023, Plaintiffs were victimized by a vehicular break-in, through which several of their electronic devices were stolen by an unknown thief.

23. Further, in March 2024, Plaintiffs received notification from their tax advisory firm, "Class Advisors" that Plaintiffs were the subject of a data breach, which compromised their personal identifying information, amongst other clients of this same firm.

24. Unfortunately, although Plaintiffs took steps to mitigate the exposure of their information to nefarious actors, including making such indications to defendant repeatedly to protect their financial lives, Plaintiffs have been victimized by unknown fraudulent activity on their deposit accounts maintained by Defendant.

25. A few weeks prior to April 30, 2024, Plaintiffs discovered over $6,000 of fraudulent charges on their account (ending 0720). Immediately upon discovery of these fraudulent charges, Plaintiffs disputed the authenticity of these charges.

26. Unfortunately, on April 30, 2024, Plaintiffs learned that this dispute was denied by Defendant.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                              **3 OF 15**                    *Rosenberg, et al. v. Chase*
**COMPLAINT**

27. On April 30, 2024, Plaintiffs contacted Andrew Babes, an employee at Chase to refute Defendant's erroneous finding and to escalate the dispute.

28. On June 20, 2024, Plaintiffs visited a branch owned and operated by Defendant, located in Lafayette, California, upon discovery that their deposit account (ending in 5418) was the subject of subsequent fraudulent transfers. In conjunction with the prior denials, and the subsequent continuing fraudulent activity, Plaintiffs hoped to be able to resolve the apparent continuing theft by communicating in person to a defendant representative.

29. Concerningly, Plaintiffs received no notifications of these fraudulent transfers.

30. Upon arriving to the Lafayette branch, Plaintiffs submitted in-person claims regarding the unauthorized nature of these transactions.   Plaintiffs were provided the following claim numbers regarding these disputed transactions: 934966830560001;        934966830560003;        934966830560004; 934966830560005.    These unauthorized transfers were in the amount of $13,732.00, $6,302.03, $8,089.59, and $1,505.00, respectively, for a total amount of unauthorized transfers totaling $29,628.62.

31. Plaintiffs worked with Defendant employee-representative, Kaveh Astanehasi, in submitting these claims to the bank.

32. Plaintiffs worked to provide Defendant organization with documentation intended to aid in the determination of fraudulent activity, to wit, by providing Defendant with a police report relating to the vehicular break-in, as well as information relating to their personal information being breached in the "Class Advisors" data leak.

33. Working with Plaintiffs, Mr. Astanehasi reviewed the account.  Mr. Astanehasi confirmed that the disputed transactions were fraudulent, and indicated to Plaintiffs that he would submit disputes relating to the charges through Defendant's procedures.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

34. Shockingly, in addition to indicating that the charges appeared to be fraudulent in nature, Mr. Astanehasi indicated that there was contact information linked to the account, which was unknown to Plaintiffs.

35. To their horror, not only were Plaintiffs unaware of the addition of this contact information, to wit, a phone number and email address, but Plaintiffs had not so much as received a notification from Defendant indicating that such information was linked to their account.

36. Immediately prior to July 3, 2024, Plaintiffs discovered additional fraudulent activity occurring on their account. Immediately following the discovery of the additional unauthorized transfers, Plaintiffs requested another in person meeting with the same Chase representative, Kaveh Astanehasi.

37. On July 3, 2024, Plaintiffs met with Kaveh Astanehasi, wherein Plaintiffs requested that Defendant close the account ending in 5418, following Defendant employee's recommendation. This Defendant employee indicated that any deposits (including direct deposits), or other transfers initiated by or for Plaintiffs, would automatically be directed to an alternative account Plaintiffs controlled, opened by Plaintiffs at the direction of Mr. Astanehasi that day. Mr. Astanehasi indicated that he would cause the account to be promptly closed, and that such aforementioned transfers would occur automatically.

38. Further and in this same meeting, Plaintiffs submitted claims for the aforementioned fraudulent transfers.

39. Additionally, during the July 3, 2024 meeting, Defendant employees requested Plaintiffs to draft a narrative summary entitled "Letter of Explanation" detailing the fraudulent transactions. Further, the Defendant's Lafayette Branch manager indicated that she requested an additional department, Branch Complaint Escalation Group ("BCEG"), to contact Plaintiffs.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                     5 OF 15                     *Rosenberg, et al. v. Chase*
COMPLAINT

40. Following this meeting, Plaintiffs were unable to access the 5418 account, unable to receive statements, and otherwise unable to monitor its status, which would lead Plaintiffs to conclude that the account had been closed, as indicated by Defendant employees.

41. On July 5, 2024, Plaintiffs submitted the aforementioned narrative summary, and emailed it to Defendant employee, Kaveh Astanehasi, and carbon copied Defendant employee, Tanh Phan.

42. On July 8, 2024, Mr. Astanehasi confirmed receipt of this narrative summary via email.

43. On July 10, 2024, Plaintiffs emailed Mr. Astanehasi to confirm that the narrative summary was submitted through the Defendant's internal processes. Plaintiffs additionally requested contact information for the Defendant's Lafayette Branch manager, in order to contact the Branch Complaint Escalation Group, through which Plaintiffs believed would aid in the resolution of these disputes.

44. On July 11, 2024, Mr. Astanehasi emailed Plaintiffs with the requested contact information for the branch manager; however, Mr. Astanehasi failed to confirm his own transmittal of the narrative summary through Chase's internal processes.

45. On or about August 2, 2024, following two weeks of silence from Defendant employees, Plaintiffs once again contacted Mr. Astanehasi requesting an update regarding the status of the claim, as well as to inquire as to the status of the escalation to Defendant's Branch Complaint Escalation Group.

46. On or about August 4, 2024, Plaintiffs finally received the long awaited phone call from the Branch Complaint Escalation Group.   To Plaintiffs' disappointment, and growing frustration, Plaintiffs were then informed that this department was unable to assist Plaintiffs in handling the disputed transactions.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

47. Although disappointed by Defendant's apparent lack of communication regarding the nature of the Branch Complaint Escalation Group, Plaintiffs trusted that their claims would be processed, and the unauthorized and fraudulently stolen funds would be returned to them.

48. During the ensuing months, Plaintiffs awaited their remaining funds to be transferred from the Account, in addition to the rerouting of scheduled transfers, which was indicated to have been an automatic process by Mr. Astanehasi.

49. Further, Plaintiff Meghan Rosenberg requested that her respective employers update their own paycheck processing systems to ensure that their wages would be directed to the newly created account.  Plaintiff Meghan Rosenberg's employer indicated that such an update would require two pay periods to pass (approximately one month).

50. Further, relying upon the promise by Mr. Astanehasi that funds transferred to the account would automatically be redirected to the newly established account, funds from sources other than their work continued transferring into this account.  Payments through third party transferring agents, such as Zelle, Venmo, or other sources continued into this Account.

51. As a result of Mr. Astanehasi's actions on July 3, 2024, Plaintiffs had lost access to monitor this account, and therefore Plaintiffs had to rely entirely upon his assertions that the remaining funds, and scheduled funds by and through third parties, would be transferred automatically, and that the theft would stop.

52. Prior to November 16, 2024, Plaintiffs would frequently inquire as to the status of the allegedly closed account.  Unfortunately, no response from Defendant would indicate conclusively the status of the account.

53. On November 16, 2024, Plaintiffs' trust in Defendant's system, however, would soon be dashed.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

54. On that day, Plaintiffs travelled to another Defendant Branch, located in Walnut Creek, California. Plaintiffs had become frustrated at the apparent lack of communication from employees located at the Lafayette Branch, and sought relief from an alternative employee of Defendant.

55. Plaintiffs met with another Defendant employee, Nathan Wirth, Assistant Vice President and Private Client Banker. Plaintiffs trusted that Mr. Wirth would be able to assist them based on Mr. Rosenberg's prior experiences dealing with Mr. Wirth.

56. During this meeting, Mr. Wirth indicated to Plaintiffs, for the first time, that Defendant employees of the Lafayette branch failed to close Plaintiffs' account (ending 5418).

57. Plaintiffs then discovered, to their shock, that many fraudulent and unauthorized transfers occurred in the account (ending 5418). Plaintiffs' shock was extreme, owing to the assertions by Mr. Astanehasi that he would close the account, following their July 3, 2024 meeting. Further, Plaintiffs' misery was compounded by Defendant restricting access to the account (ending 5418) so that Plaintiffs could not monitor it, and by relying upon Mr. Astanehasi's assertions that remaining funds would be transferred to a new account, and that new funds transmitted from third parties would likewise be transferred automatically, Plaintiffs suffered grievously.

58. In addition to the aforementioned unauthorized transfers disputed on June 20, 2024, Plaintiffs suffered over $70,000 in unauthorized transfers.

59. Plaintiff promptly disputed these unauthorized transfers, receiving claim numbers from Defendant.

60. Over the ensuing days, Plaintiffs met with Mr. Wirth to ensure that all of the fraudulent transfers were documented and disputed. Over the course of at least six such meetings, Mr. Wirth agreed that the transactions appeared to be

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                          **8 OF 15**                    *Rosenberg, et al. v. Chase*
**COMPLAINT**

fraudulent in nature.   Plaintiffs' and Mr. Wirth reviewed hundreds of transactions to determine their authenticity, and to submit disputes.

61. Due to the significance, multiplicity, and amount of the unauthorized transfers, Plaintiffs have endeavored to capture this information and relay it below:

| Claim Number | Account Number | Date Submitted | Claim Status | Approval Status | Amount | Denied | Approved | Pending |
|---|---|---|---|---|---|---|---|---|
| 545011105670001 | | 11/16/2024 | Closed | Denied | $ 8,178.74 | $ 8,178.74 | | |
| 945013958200001 | | 11/16/2024 | Closed | Denied | $ 881.77 | $ 881.77 | | |
| 805013541950001 | | 11/16/2024 | Closed | Denied | $ 3,917.46 | $ 3,917.46 | | |
| 125006430150003 | | 11/18/2024 | Closed | Denied | $ 10,305.00 | $ 10,305.00 | | |
| 125006430150002 | | 11/18/2024 | Closed | Denied | $ 11,590.39 | $ 11,590.39 | | |
| 125006430150001 | | 11/18/2024 | Closed | Denied | $ 28,394.00 | $ 28,394.00 | | |
| jpm241121-014392 | 639495418 | 11/21/2024 | Closed | Denied | $ 1,000.00 | $ 1,000.00 | | |
| jpm241121-014418 | 639495418 | 11/21/2024 | Closed | Denied | $ 1,000.00 | $ 1,000.00 | | |
| jpm241121-014470 | 639495418 | 11/21/2024 | Closed | Denied | $ 500.00 | $ 500.00 | | |
| 3150336540001 | 639495418 | 2/4/2025 | Closed | Approved | $ 1,765.00 | | $ 1,765.00 | |
| 685036044380002 | 639495418 | 1/24/2025 | Closed | Approved | $ 500.00 | | $ 500.00 | |
| 685036044380001 | 639495418 | 1/24/2025 | Closed | Approved | $ 3,563.64 | | $ 3,563.64 | |
| 815035973630001 | 639495418 | 1/24/2025 | Closed | Approved | $ 3,535.00 | | $ 3,535.00 | |
| 3350380670001 | 639495418 | 1/24/2025 | Pending | Pending | $ 1,765.00 | | | $ 1,765.00 |
| 365028978490001 | 639495418 | 1/21/2025 | Closed | Denied | $ 800.00 | $ 800.00 | | |
| 295009849740001 | 639495418 | 11/20/2024 | Closed | Denied | $ 4,604.25 | $ 4,604.25 | | |
| 934966830560005 | 639495418 | 6/20/2024 | Clsoed | Approved | $ 1,505.00 | | $ 1,505.00 | |
| 934966830560001 | 639495418 | 6/20/2024 | Closed | Denied | $ 13,732.00 | $ 13,732.00 | | |
| 2849626892350000 | 639495418 | 6/20/2024 | Closed | Denied | $ 1,826.07 | $ 1,826.07 | | |
| 574966036770001 | 639495418 | 6/20/2024 | Closed | Denied | $ 3,465.08 | $ 3,465.08 | | |
| 184945227270001 | 639495418 | 6/20/2024 | Closed | Denied | $ 4,942.00 | $ 4,942.00 | | |
| Totals | | | | | $ 107,770.40 | $95,136.76 | $10,868.64 | $ 1,765.00 |

62. Following Plaintiffs' November 16, 2024 meeting with Defendant employees, Plaintiffs communicated thoroughly, with supporting documentation.  Plaintiffs attempted to reach many persons within the corporate structure of Defendant corporation; however, at each turn, they were either ignored, neglected, or outright insulted by Defendant's recalcitrance.

63. For instance, while Plaintiffs' felt understood and supported by Mr. Wirth, Plaintiffs learned that the Defendant corporation would turn a blind-eye to their pleas for help.

64. Indeed, Mr. Wirth appeared to believe strongly in the fraudulent nature of these many disputed transactions, and that the actions by various Defendant employees were incorrect.   Mr. Wirth penned a letter detailing the many wrongdoings that Mr. Wirth observed, requested Defendant reconsider its

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

determinations, and provided details regarding the many issues presented at the Lafayette branch. On information and believe, Plaintiffs contend that this letter was submitted to Mr. Wirth's manager, as well as the Branch Complaint Escalation Group.

65. Confusingly, some of the disputed transfers have been refunded by Defendant; however, this represents a small number of the total fraudulent and unauthorized transfers.

66. Despite Plaintiffs' thoroughness in disputing these transfers, Defendant has failed totally in fulfilling their obligations to Plaintiffs by failing to reasonably investigate Plaintiffs' disputes and to refund the stolen monies.

67. For example, Defendant resolved many of the complex dispute claims within 24 hours of receipt, indicating a cursory and completely lacking dispute investigation.

68. Plaintiff submitted their disputes to Defendant in less than 60 days from receipt of Account statements showing the unauthorized transactions.

69. Plaintiffs, at all times, thoroughly communicated and well documented their disputes to Defendant. At all times, Plaintiffs attempted to work with Defendant to resolve these matters directly with Defendant.

70. The abovementioned transactions, identified by claim numbers 545011105670001; 945013958200001; 805013541950001; 125006430150003; 125006430150002; 125006430150001; 3150336540001; 685036044380002; 685036044380001; 815035973630001; 3350380670001; 365028978490001; 295009849740001; 934966830560005; 934966830560001; 2849626892350000; 574966036770001; 184945227270001 were unauthorized electronic fund transfers as defined by 15 U.S.C. § 1693a(12); and, 12 C.F.R. 1005.2(m).

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                          10 OF 15                    *Rosenberg, et al. v. Chase*
**COMPLAINT**

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

71. To date, Defendant continues to hold Plaintiffs responsible for the fraudulent transactions, with the exception of the following disputes refunded to Plaintiffs: 3150336540001; 685036044380002; 685036044380001; 815035973630001; 934966830560005.

72. Plaintiffs additionally believe that they have submitted additional disputes to Defendant, claim numbers and amounts that they were unable to document given the size and scope of the theft.

73. Through this conduct, Defendant violated 15 U.S.C. § 1693f.

74. Through this conduct, Defendant violated 15 U.S.C. § 1693g.

75. Certain disputed transfers were "wire transfers" governed by, inter alia, California Commercial Code § 11101, et seq.  These disputed transfers were given the following claim numbers: jpm241121-014392; jpm241121-014418; jpm241121-014470.

76. The request to have the unauthorized wire transfers initiated was a "payment order" under California Commercial Code § 11103.

77. Plaintiffs and Defendant did not have an agreed upon "security procedure" as defined under California Commercial Code § 11201.

78. As explained above, Plaintiffs did not approve of these transfers and the wire transfer was initiated without Plaintiffs' consent. Thus, the transfer was not authorized transfers under California Commercial Code § 11202(a).

79. Plaintiffs notified Defendant of the fact that the transfer was unauthorized within statutory period defined in Section 11204 of the Commercial Code.

80. Defendant is obligated to refund said fraudulent wire transfers to Plaintiffs under Section 11204 of the Commercial Code. Defendant failed to do so.

81. As a result of Defendant's failure to adhere to these statutory requirements, Claimant was damaged in the amount of $2,500, the unauthorized transfer, plus

$35.00 in online domestic wire transfer fees totaling $2,535, plus interest as allowed by law.

82. As indicated by the very nature of these unauthorized transfers, Defendant's security surrounding the initiation of a wire transfer is inadequate.

83. As indicated by the thoroughness and timeliness of Plaintiffs' disputes, Defendant's investigation of any disputed transaction was wholly inadequate.

84. On multiple occasions, Plaintiffs contacted Defendant to dispute the fraudulent activity.

85. However, to date, Defendant has not provided provisional credits on some of the disputed transactions, have not reversed or refunded Plaintiff for all of the fraudulent activity, and have not stated the reason for the conclusion of its investigation.

86. Plaintiffs submitted their dispute regarding the wire transfers to Defendant in less than 90 days from after receipt of notification from Defendant that the unauthorized order was accepted by it or that the Plaintiffs' account was debited.

87. Defendant's investigation of any transaction was unreasonable.

88. More specifically, Defendant should have discovered from its own records, including Plaintiffs' investigative materials, that all of the transactions at issue were unauthorized and fraudulent transactions.

89. At the very least, Defendant should have realized that at the time of the bulk of the transactions, Plaintiffs did not have access to, nor any means of interacting with, the Account.

90. Defendant did not have a reasonable basis for believing that Plaintiffs' account was not in error.

91. Defendant knowingly and willfully concluded that Plaintiffs' account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation.

92. Through this conduct, Defendant violated California Commercial Code § 11204.

93. To date, Defendant continues to hold Plaintiffs responsible for the fraudulent transactions.

94. Such failures by Defendant has resulted in significant harm to Plaintiffs. As a result of having a minimum of $95,136.76 unreturned to Plaintiffs, Plaintiffs have, inter alia, been forced to take loans from family members, suffered significant harm to their credit as a result of a reliance on credit cards, untimely paid car payments, utility bills, cell phone bills, late payment fees on rent, and credit card bills, including the concomitant debt that arises from the reliance upon such revolving lines of credit.

95. Plaintiffs have further suffered significant emotional distress, resulting in therapy sessions, stress relating to their marriage, and other significant impacts on their emotional state.

96. Plaintiffs have suffered reputational damage, including but not limited to, with their landlord on the basis of late rental payments, and Ms. Rosenberg's former employer.

97. Plaintiffs have suffered from time spent dealing with Defendant employees for significant amounts of time.

98. Plaintiffs have suffered as a result of Defendant lower performance at work, as a result of time spent dealing with these disputes and the failure of Defendant to promptly refund the monies, resulting in Ms. Rosenberg's termination from her employer.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

99. Plaintiffs have suffered as a result of Defendant a delay in being able to purchase their first home, as a result of the aforementioned decreased credit score, banking issues, current debt exposure.

100. Most heart breaking, Plaintiffs have been forced to delay having their first child, as a result of Defendant's actions, due to the aforementioned financial strain.

101. Since Plaintiffs' efforts to be absolved of the unauthorized fraudulent transactions were unsuccessful, Plaintiffs are required to bring this action to finally resolve Plaintiffs' disputes.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

## COUNT I

## VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT

## 15 U.S.C. §§ 1693, ET SEQ. (EFTA)

102. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

103. The foregoing acts and omissions constitute numerous and multiple violations of EFTA.

104. As a result of each and every violation of EFTA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

## COUNT II

## VIOLATION OF THE CALIFORNIA COMMERCIAL CODE,

## §§ 11101, ET SEQ.

105. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as thorough fully stated herein.

106. The foregoing acts and omissions constitute numerous and multiple violations of California Commercial Code §§ 11101, et seq.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

CASE NO.:                    14 OF 15           *Rosenberg, et al. v. Chase*
                          **COMPLAINT**

107. As a result of each and every violation of the California Commercial Code, Plaintiffs are entitled to a refund of the unauthorizedly wire transferred funds, including interest, pursuant to California Commercial Code section 11204.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against Defendant for:

- An award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1) for Plaintiff;
- An award of statutory damages of no less than $100 nor greater than $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A) for Plaintiff;
- An award of costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3);
- An award of punitive damages, in an amount to be determined at trial, pursuant to California Civil Code § 3294(a);
- Treble damages under Cal. Civ. Code § 3345;
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

108. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Dated: April 16, 2025                                   Respectfully submitted,


                                                        **LOKER LAW, APC**


                                    By:  ___/s/ Charles B. Cummins___
                                         CHARLES B. CUMMINS, ESQ.
                                         ATTORNEY FOR PLAINTIFF

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420